UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROLAND B. CUMMINS,
                    Plaintiff,

-against-

U.S. XPRESS, INC. a/k/a U.S. EXPRESS
LSG, INC. and CHARLES D. SPRAY,

                    Defendants.

**MEMORANDUM OPINION
AND ORDER**

05 Civ. 4727 (PGG)

PAUL G. GARDEPHE, U.S.D.J.

       Plaintiff Roland B. Cummins brought this action after sustaining injuries on November 12, 2004, when his parked tractor trailer was struck by a tractor trailer operated by Defendant Spray and owned by Defendant U.S. Xpress. Defendants have moved for summary judgment on the ground that Plaintiff did not sustain a "serious injury" within the meaning of New York Insurance Law § 5102(d). (Dkt. No. 7) Defendant U.S. Xpress also seeks summary judgment on Plaintiff's negligent hiring and supervision claim on the ground that it has conceded that it is liable for Defendant Spray's negligent acts. (Def. Br. at 12-14) For the following reasons, Defendants' motion is DENIED with respect to Plaintiff's anxiety disorder and depression claims, but is otherwise GRANTED.

**DISCUSSION**

       A court must grant summary judgment where "there is no genuine issue as to any material fact" and the moving party shows that it "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To defeat a motion for summary judgment, the non-moving party "must establish that there is a genuine issue of material fact" by doing

more than "simply show[ing] that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A court should not grant summary judgment if, "after resolving all ambiguities and drawing all inferences in favor of the non-moving party," it determines that "a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).

I.      **New York's No-Fault Insurance Law**

New York Insurance Law § 5104(a) provides that in a personal injury or negligence action between insured persons, "there shall be no right of recovery for non-economic loss, except in the case of a serious injury." New York Insurance Law § 5102(d) defines "serious injury" to include, inter alia, a personal injury that results in: (1) a "permanent consequential limitation of use of a body organ or member" (hereafter the "permanent consequential limitation" category); (2) a "significant limitation of use of a body function or system" (hereafter the "significant limitation" category); or (3) "a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment" (hereafter the "90/180" category).

The New York Court of Appeals has held that because the purpose of the no-fault statute is to reduce litigation, "[i]t is incumbent upon the court to decide in the first instance whether [a] plaintiff has a cause of action to assert within the meaning of the statute" by "determin[ing] whether the plaintiff has established a prima facie case of sustaining serious injury." Licari v. Elliott, 57 N.Y.2d 230, 237, 455 N.Y.S.2d 570

(1982). "If it can be said, as a matter of law, that plaintiff suffered no serious injury . . . , then plaintiff has no claim to assert and there is nothing for the jury to decide." Id.

In order to prevail on a motion for summary judgment on this issue, the defendant must offer evidence establishing a "prima facie case that plaintiff's injuries were not serious." Gaddy v. Eyler, 79 N.Y.2d 955, 956, 582 N.Y.S.2d 990 (1992). If the defendant does so, the "burden then shift[s] to [the] plaintiff to come forward with sufficient evidence to . . . demonstrate that []he sustained a serious injury within the meaning of the No-Fault Insurance Law." Id. at 957.

Moreover, summary judgment for a defendant is warranted where there is insufficient "objective medical evidence" for a jury to find that the plaintiff's injuries were caused by the accident:

> "To recover damages for noneconomic loss related to personal injury allegedly sustained in a motor vehicle accident, the plaintiff is required to present nonconclusory expert evidence sufficient to support a finding not only that the alleged injury is 'serious' within the meaning of Insurance Law § 5102(d), but also that the injury was causally related to the accident. Absent an explanation of the basis for concluding that the injury was caused by the accident, as opposed to other possibilities evidenced in the record, an expert's conclusion that plaintiff's condition is causally related to the subject accident is mere speculation, insufficient to support a finding that such a causal link exists."

Valentin v. Pomilla, 59 A.D.3d 184, 873 N.Y.S.2d 539, 539-40 (1st Dep't 2009), quoting Diaz v. Anasco, 38 A.D.3d 295, 295-96, 831 N.Y.S.2d 398 (1st Dep't 2007) (holding that defendants were entitled to summary judgment where plaintiff failed to offer "any objective medical evidence that his injuries were caused by the accident"). Thus, where there is evidence that the plaintiff had a pre-existing condition at the time of the accident and the plaintiff fails to offer sufficient evidence to show that the injuries were caused by the accident rather than the pre-existing condition, the defendant is entitled to summary

3

judgment. Id.; see also Pommells v. Perez, 4 N.Y.3d 566, 574-75 (2005) (affirming dismissal of complaint where plaintiff had pre-existing condition and failed to offer evidence that his injuries were actually caused by the accident).

## II. Plaintiff's Claim for Non-Economic Damages

Plaintiff asserts that he suffered hypertension[1], anxiety disorder, and depression following the accident and that those injuries qualify as "serious injuries" under the "permanent consequential limitation" and "significant limitation" categories. (Pltf. Br. at 7-10) Plaintiff also asserts that, because of his injuries, he was unable to work or engage in other routine household activities for more than eighteen months, and therefore suffered a serious injury under the "90/180" category.[2] (Pltf. Br. at 10-13) Defendants argue that they are entitled to judgment as a matter of law as to all three categories. (Def. Br. at 5-11)

---

[1] Plaintiff also asserts that he suffered heart damage consisting of a "left bundle branch block" in his heart. (Pltf. Br. at 7)

[2] Defendants devote a substantial portion of their brief to their argument that Plaintiff's knee and back injuries do not qualify as "serious injuries" under the "permanent consequential limitation" and "significant limitation" categories. (Def. Br. at 2-8) In his memorandum of law, Plaintiff does not argue that his knee and back injuries qualify as serious injuries under those categories. Therefore, the Court considers Plaintiff to have abandoned any claim that his knee and back injuries were "serious injuries" under the "permanent consequential limitation" and "significant limitation" categories. See Grana v. Potter, No. 06-Civ.-1173(JFB)(ARL), 2009 WL 425913, at *15 (E.D.N.Y. Feb. 19, 2009) (considering claim abandoned because plaintiff's summary judgment opposition "contained no factual or legal discussion" of the claim); Bronx Chrysler Plymouth, Inc. v. Chrysler Corp., 212 F. Supp. 2d 233, 249 (S.D.N.Y. 2002) (dismissing claim as abandoned because party opposing summary judgment "made no argument in support of th[e] claim at all" in its summary judgment opposition papers); Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (dismissing as abandoned claims that defendants addressed in motion for summary judgment but plaintiff failed to address in his opposition papers).

  A. **Plaintiff's "Permanent Consequential Limitation"**
    <u>**and "Significant Limitation" Claims**</u>

    1. <u>**Hypertension and Heart Damage**</u>

Defendants argue that they are entitled to summary judgment with respect to Plaintiff's hypertension and heart damage claims because there is insufficient evidence that they were caused by the accident. (Def. Br. at 6; Def. Reply Br. at 2)

Plaintiff does not dispute that he suffered from hypertension prior to the November 2004 accident, nor could he reasonably do so. (<u>See, e.g.</u>, Def. Ex. F at 7 (medical records from April 23, 2004 indicating that after a work physical Plaintiff was "grounded until B/P down"); Pltf. Ex. 3 (medical report from May 13, 2004 stating that Plaintiff has a "history of hypertension")) Rather, he contends that prior to the accident, his blood pressure problems were "under control." (Pltf. Rule 56.1 Resp. ¶ 29; <u>see also</u> Def. Ex. F at 9 (doctor's note dated April 26, 2004 stating "BP looks reasonably controlled"); Pltf. Ex. 3 at 3 (medical report from May 13, 2004 stating that Plaintiff had "[b]enign hypertension, now controlled")).

However, Plaintiff cannot defeat Defendants' summary judgment motion simply by creating a genuine dispute as to whether his hypertension was under control prior to the accident. He must also offer objective medical evidence from which a jury could find that his post-accident high blood pressure was in fact caused by the accident. To make this showing, Plaintiff offers the affidavit testimony of his physician, Dr. Tami Engel, that "it is possible that the accident contributed to his elevated blood pressure." (Pltf. Ex. 9 ¶ 5) Dr. Engel further states that "[t]he circumstances of the accident and his

5

following inability to work has caused [Plaintiff] to suffer from anxiety and depression, which may have contributed to his elevated blood pressure." (Id. ¶ 6)[3]

To rebut Plaintiff's evidence, Defendants point to two contrary statements in Plaintiff's medical records. First, on August 2, 2005, Plaintiff's doctor (Dr. Mullendore) noted that Plaintiff "saw Dr. Weaver recently[,] who told patient that his accident did not cause his high blood pressure." (Def. Rule 56.1 Stat. ¶ 26 & Def. Ex. G at 15)[4]  Second, Plaintiff's cardiologist, Dr. Nallamothu, stated that on February 7, 2006, Plaintiff advised him that he was not taking his blood pressure medication. (Def. Ex. J at 1)  Dr. Nallamothu also noted that "[m]edication non-compliance is an issue" and that Plaintiff had a number of cardiac risk factors. (Id. at 2, 4)  Dr. Nallamothu reported to Dr. Mullendore that he "could not give a statement saying that . . . [Plaintiff's] automobile accident caused damage to his heart." (Def. Rule 56.1 Stat. ¶ 27; Def. Ex. J (2/7/06 letter from Dr. Nallamothu to Dr. Mullendore) at 1)

---

[3] Plaintiff also cites a June 17, 2005 letter from Dr. Mullendore, which states that Plaintiff "had no known prior history of hypertension" and that "[c]onsequently, his high blood pressure may have resulted from the stress of his accident and subsequent pain syndrome and rehabilitation." (Pltf. Ex. 2 at 21)  Dr. Mullendore's statement that Plaintiff had no prior history of hypertension appears to be incorrect, however, based on Plaintiff's own medical records. (See, e.g., Pltf. Ex. 3 (medical report from May 13, 2004 stating that Plaintiff has a "history of hypertension"))  Moreover, Dr. Mullendore's letter was not sworn to or affirmed under penalty of perjury and therefore cannot properly be considered by this Court in deciding this motion. See Hill v. Rayboy-Braustein, 467 F. Supp. 2d 336, 361 (S.D.N.Y. 2006) (a signed but unsworn letter, which is not otherwise authenticated, "should not be considered as evidence in opposition to a motion for summary judgment"); Peschanker v. Loporto, 252 A.D.2d 485, 486, 675 N.Y.S.2d 363, 364 (2d Dep't 1998) (court properly declined to consider medical report that was not affirmed under penalty of perjury).  In any event, Dr. Mullendore's letter would not be sufficient to defeat Defendants' summary judgment motion for the same reasons that Dr. Engel's testimony is insufficient for that purpose.

[4] The cited statements from Defendants' Rule 56.1 Statement are admitted in Plaintiff's Rule 56.1 Response.

6

Dr. Nallamothu's written report is supplemented by an affidavit, in which Dr. Nallamothu confirms that Plaintiff told him on February 7, 2006 that he was not taking his blood pressure medication; that Plaintiff asked him for a letter opining that the accident caused his heart damage and hypertension; and that Dr. Nallamothu refused to provide such an opinion. (Def. Ex. M (6/12/06 Affidavit of Nasar Nallamothu) ¶¶ 15-17)

The evidence offered by Defendants suggests that Plaintiff's post-accident hypertension resulted from a pre-existing condition, and was possibly exacerbated by Plaintiff's failure to take his medication. Dr. Engel's conclusory testimony that it is "possible" that the accident "contributed to" Plaintiff's hypertension does not address this evidence, and is therefore insufficient to defeat summary judgment. [5]

New York courts have held that:

> in the absence of an explanation of the basis for concluding that the injury was caused by the subject accident, and not by other possible causes evidenced in the record, an expert's "conclusion that plaintiff's condition is causally related to the subject accident is mere speculation" insufficient to support a finding that such a causal link exists.

Carter v. Full Serv., Inc., 29 A.D.3d 342, 344, 815 N.Y.S. 2d 41, 43 (1st Dep't 2006). It would be mere speculation for a jury to conclude based on the record here that the accident caused Plaintiff's hypertension, and Defendants are therefore entitled to summary judgment on Plaintiff's claim that his hypertension is a serious injury caused by the accident. See also, e.g., Valentin, 873 N.Y.S.2d at 539 (defendant entitled to

---

[5] Plaintiff has offered affidavit testimony that he did not tell Dr. Nallamothu that he was not taking his blood pressure medication. (Pltf. Ex. 10 ¶ 2) However, because Dr. Engel did not address either Plaintiff's prior history of hypertension or the evidence from Dr. Nallamothu that "medication non-compliance is an issue," the existence of a dispute concerning what Plaintiff told Dr. Nallamothu does not warrant denying summary judgment.

7

summary judgment on causation where plaintiff's doctors reported pre-existing condition and plaintiff's expert, who opined that plaintiff's injury was caused by the accident, "fail[e]d . . . to mention, let alone explain, why he ruled out" the pre-existing condition as the cause of plaintiff's injury); Ferebee v. Sheika, 58 A.D.3d 675, 676, 873 N.Y.S.2d 93 (2d Dep't 2009) (opinion that plaintiff's injuries were caused by accident was "rendered speculative" by fact that opining doctor did not address contrary opinion that injury was the result of a pre-existing condition). [6]

### 2.  Anxiety Disorder and Depression

As with Plaintiff's hypertension claim, the key issue with respect to Plaintiff's anxiety disorder and depression claims is whether they were caused by the accident. [7] Plaintiff has offered evidence demonstrating a causal relationship between the accident and these disorders, and Defendants have not rebutted this evidence.

---

[6] Plaintiff has offered no evidence demonstrating that his heart damage was caused by the accident. Accordingly, that claim also fails.

[7] Courts have recognized that psychological disorders may constitute "serious injuries" under New York Insurance Law § 5102(d). See Wahl v. Lothiam, 235 F. Supp. 2d 334, 336 (S.D.N.Y. 2002) ("New York courts have recognized that an emotional injury, causally related to an automobile accident, can constitute a serious injury sufficient to support a cause of action to recover damages for noneconomic loss"); Chapman v. Capoccia, 283 A.D.2d 798, 725 N.Y.S.2d 430, 432 (3d Dep't 2001) (holding that post traumatic stress disorder can be a "serious injury"); Sellitto v. Casey, 268 A.D.2d 753, 702 N.Y.S.2d 177, 180 (3d Dep't 2000) ("mental and emotional impairment may in certain circumstances constitute a 'significant limitation of use of a body function or system' under Insurance Law § 5102(d)"); Quaglio v. Tomaselli, 99 A.D.2d 487, 470 N.Y.S.2d 427, 429 (2d Dep't 1984) (depression neurosis can constitute "serious injury").

Defendants have not offered any medical evidence to establish a prima facie showing that Plaintiff's anxiety and depression disorders are not "serious injuries" within the meaning of Section 5102(d), and therefore they are not entitled to summary judgment on that ground. See Miller v. Bah, 58 A.D.3d 815, 872 N.Y.S.2d 173, 174 (2d Dep't 2009) (reversing grant of summary judgment on ground that defendant "failed to offer evidence sufficient to establish, prima facie, that the plaintiff did not sustain a serious injury within

Plaintiff's medical evidence showing that he has suffered from depression and anxiety since the accident includes the following: First, Plaintiff has offered a report from a February 16, 2006 examination by his physician, Dr. Tami Engel, noting his "depressive symptoms" and stating that she was referring him to a psychotherapist "for treatment of his depression and anxiety." (Pltf. Ex. 9) Second, Plaintiff has offered an intake report from a February 23, 2006 examination by a therapist, Lark Kirchner, which states, inter alia, that Plaintiff's "[p]resenting problems include continuous anxiety" and "chronic depression," and that he "meets the criteria for depression, and most for [post-traumatic stress disorder]." (Pltf. Ex. 7)

As to causation, Plaintiff again relies on the affidavit testimony of Dr. Engel, who states: "The circumstances of the accident and his following inability to work has caused . . . [Plaintiff] to suffer from anxiety and depression." (Pltf. Ex. 9 ¶ 6) While Plaintiff's causation evidence is sparse, the record on this issue differs from that concerning Plaintiff's hypertension in several important respects. First, Dr. Engel has testified that Plaintiff's anxiety and depression were caused by the accident, not just that the accident was a "possible" cause. Second, there is no evidence in the record suggesting a different cause for Plaintiff's anxiety and depression in 2006, whereas there is evidence of another cause for Plaintiff's post-accident hypertension (i.e., it was pre-existing and he may have failed to take his medication).

---

the meaning of . . . [Section] 5102(d)"); Caron v. Moore, 301 A.D.2d 942, 944, 755 N.Y.S.2d 109, 111 (3d Dep't 2003) (denying summary judgment were defendants failed to establish prima facie case that plaintiff's injuries, including depression, were not serious injuries under the "permanent consequential limitation" and "significant limitation" categories).

Therefore, although Dr. Engel's testimony is very brief, there was no need for her to rule out other potential causes of Plaintiff's anxiety and depression. A jury could rationally find, based on her testimony, that Plaintiff's anxiety and depression were caused by the accident.[8]

While Defendants argue in a conclusory fashion that Plaintiff's anxiety disorder and depression were not caused by the accident (Def. Br. at 2), the only evidence they cite on this issue is a telephone message slip suggesting that Plaintiff was taking medication for anxiety four months before the accident. (Def. Rule 56.1 Stat. ¶ 32) The phone message was contained in Plaintiff's medical files; is dated July 15, 2004; indicates that a medical examiner working for Plaintiff's employer had called to ask why Plaintiff was taking Lorazepam; and notes that "Dr. Yousuf said pt. on Lorazepam for anxiety and white coat syndrome." (Def. Ex. F)[9] This evidence (which is hearsay) is not sufficient to show that Plaintiff was taking an anti-anxiety medication to treat an ongoing anxiety disorder, and Defendants have not offered evidence showing that Plaintiff was in fact taking an anxiety medication or suffering from an anxiety disorder in November

---

[8] Defendants are not entitled to summary judgment on the ground that Dr. Engel's testimony suggests that Plaintiff's anxiety and depression were caused in part by his inability to work. Although, as discussed below, Plaintiff has not offered evidence demonstrating that his inability to work was caused by the injuries he suffered in the accident, a plaintiff may recover even where his psychological disorder is caused only in part by an accident. See Chapman, 283 A.D.2d at 801, 725 N.Y.S.2d at 433 (trial court erred in granting judgment as a matter of law to defendants where competent medical evidence showed that plaintiff's post-traumatic stress disorder was caused in part by accident).

[9] Neither party has offered evidence concerning the meaning of "white coat syndrome," but it appears that that term refers to "high blood pressure only in the doctor's office." Attorneys Medical Deskbook § 5:25 (4th ed. 2008). Therefore, the message slip suggests that Plaintiff had been given anti-anxiety medication in order to determine whether his high blood pressure readings were due to anxiety associated with his doctor visits.

2004 when the accident took place.  Moreover, Defendants have offered no evidence demonstrating that Plaintiff suffered from depression prior to the accident.  In short, Defendants have not demonstrated that Plaintiff suffered from an anxiety disorder or from depression prior to the accident, and therefore they are not entitled to summary judgment on Plaintiff's anxiety disorder and depression claims.

### B.  Plaintiff's "90/180" Claim

In order to show a serious injury under the "90/180" category, a plaintiff must:  (1) "offer[] sufficient objective medical evidence to establish a qualifying injury or impairment," Toure, 98 N.Y.2d at 357; and (2) show that the impairment prevented him from "performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment."  N.Y. Ins. Law § 5102(d).  Plaintiff has not offered sufficient evidence to establish that he can make the required showing here.

It is undisputed that Plaintiff did not return to work following the accident and did not work at all during 2005.  (Def. Ex. M (2/23/06 Cummins Dep.) 20:21-23)  Plaintiff testified that the reason he was not able to return to work as a truck driver, however, was that his blood pressure was too high to pass the Department of Transportation physical.  (Id. 83:16-84:5)  Because Plaintiff has not offered sufficient evidence for a jury to find that his high blood pressure was caused by the accident, there is also no basis for a jury to find that his inability to work during this time period was caused by the accident.  Valentin, 873 N.Y.S.2d at 540 (dismissing plaintiff's "90/180" claim because he had not offered "objective medical evidence that his injuries were caused by the accident").

11

Plaintiff has also testified that: he did not think he could get into his truck after the accident because of pain in his knee (id. 84:19-24); as of February 2006, he "[couldn't] lift as much" as before the accident, although he had "no clue" as to how much less he could lift (id. 84:6-14); he could no longer hook his snow plow to his truck (id. at 88:17-21); and he had not taken his boat out since the accident because he did not want to "throw . . . out" his neck (id. 86:22-87:9). This testimony is insufficient to establish that Plaintiff suffered a serious injury in the "90/180" category, however, because it does not provide a basis for a jury to find that Plaintiff was limited in "substantially all of" his "usual and customary daily activities," N.Y. Ins. Law § 5102(d), for the requisite period of time. See, e.g., Covey v. Simonton, 481 F. Supp. 2d 224, 240 (E.D.N.Y. 2007) (plaintiff's testimony "about missing occasional dancing and other recreational activities" could not defeat summary judgment because there was no evidence that these activities were "customary daily activities"); Below v. Randall, 240 A.D.2d 939, 940, 658 N.Y.S.2d 767, 768 (3d Dep't 1997) (finding that plaintiff had not presented sufficient evidence of a "serious injury" where, even accepting "that plaintiff could not engage in certain activities and sports, there has been no showing that these restrictions were medically indicated or that the activities comprised a significant portion of plaintiff's usual daily activities").

Therefore, Defendants are entitled to summary judgment on Plaintiff's claim that he suffered a serious injury under the "90/180" category.

### III.    Plaintiff's Negligent Hiring and Supervision Claim

Defendants argue that Plaintiff's negligent hiring and supervision claim should be dismissed because Defendant U.S. Xpress has conceded that it is "liable to [P]laintiff for any negligence of [Defendant] Spray, pursuant to the doctrine of

respondeat superior." (Def. Br. at 12) Defendants are correct that "[u]nder New York law, claims for negligent hiring, supervision or retention are generally not permitted when the agency relationship necessary for respondeat superior is established." Lee ex rel. Estate of Lee v. J.B. Hunt Transport, Inc., 308 F. Supp. 2d 310, 312 (S.D.N.Y. 2004).

Plaintiff nonetheless argues that he should be permitted to proceed under an exception to this rule, which applies "where the injured plaintiff is seeking punitive damages from the employer based on alleged gross negligence in the hiring or retention of the employee." Karoon v. New York City Transit Auth., 241 A.D.2d 323, 659 N.Y.S.2d 27 (1st Dep't 1997). (See Pltf. Br. at 13-14) However, Plaintiff did not allege in the Complaint that U.S. Xpress was grossly negligent in hiring or retaining Spray or that he was seeking punitive damages, nor has he offered any evidence that suggests he could make such a claim in good faith. Therefore, there is no basis to find that the exception cited by Plaintiff applies in this case. Accordingly, Defendants are entitled to summary judgment on Plaintiff's negligent hiring and supervision claim

## CONCLUSION

Defendants' motion for summary judgment (Dkt. No. 7) is GRANTED IN PART and DENIED IN PART. Defendants' motion is denied with respect to Plaintiff's anxiety disorder and depression claims but is otherwise granted.

Dated: New York, New York
March 30, 2009

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge